IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> LUIS TREVINO, ) <br> ) <br> Petitioner, ) <br> v. ) <br> ) <br> MARCUS HARDY, Warden, ) <br> Stateville Correctional Center, ) <br> ) <br> Respondent. ) | No. 11 C 835 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner Luis Trevino, an inmate incarcerated at the Stateville Correctional Center, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2254, claiming that his Fourth Amendment rights were violated because the police lacked probable cause for his arrest. For the following reasons, the petition is denied, and the court declines to issue a certificate of appealability.

## BACKGROUND

Before his trial for murder and robbery, petitioner filed a motion to quash his arrest and suppress evidence, including inculpatory statements he made to the police shortly after his arrest, based on his claim that the police lacked probable cause to arrest him. The trial court held an extensive evidentiary hearing on that motion, at which the evidence presented showed the following:

On the night of May 22, 2001, a Maywood police officer responded to a report of an explosion at 915 North Ninth Avenue in Maywood, Illinois. When he arrived on the scene, he saw that a van parked near that address was on fire. After the fire was extinguished, investigators found two bodies in the van. The bodies were burned beyond recognition, and

police were unable to identify the victims' gender, race, nationality, hair color, height, or weight. The police officer saw shell casings and blood near the van, and spoke with several witnesses who reported hearing explosions. He canvassed the area but failed to find any eyewitnesses.

On his way to work the next morning, Detective David Franklin of the Downers Grove Police Department heard a radio news report about a double murder in Maywood, from which he learned that two people had been shot and killed and left in a van that had been set on fire. Shortly thereafter, he received a call from his sergeant regarding an incident earlier that morning at the Ace Reprographics manufacturing plant in Downers Grove. Detective Franklin was told that petitioner, an Ace employee, had been seen placing a black plastic bag in a dumpster inside the building. When another employee investigated and found what appeared to be bloody clothing inside the bag, he had contacted the police.

Detective Franklin went to the Ace plant to investigate. The other employee, Stanley Ryczewicz, told him that he had seen petitioner walk with a black plastic bag toward a dumpster inside the plant, in an area where petitioner did not belong. Ryczewicz explained that petitioner repeatedly turned his head to see if anyone was watching him, and looked "very suspicious." Ryczewicz did not actually see petitioner place the bag in the dumpster, but he saw petitioner walk away from the dumpster without the bag. Ryczewicz further reported that he had retrieved the bag—the only black bag in the dumpster—and taken it to his office, replacing the bag with another black garbage bag, which he had filled with shredded paper. When Detective Franklin looked inside the bag that Ryczewicz had retrieved, he discovered clothing, an envelope, towels and washcloths, and latex gloves. Some of the items were covered in what appeared to be blood.

Upon learning that petitioner lived in Stone Park, a town located near Maywood, it occurred to Detective Franklin that petitioner might have been involved in the Maywood incident.

At that point, Detective Franklin contacted a Maywood police officer. After Detective Franklin explained that he was investigating a resident of a town near Maywood who had disposed of possibly bloody clothing in a dumpster at his workplace, the Maywood officer responded that there had been a double murder in Maywood the previous night, and there were no suspects in custody. The Maywood officer requested that petitioner be taken into custody for questioning. Detective Franklin then arrested petitioner, advising him of his Miranda rights and handcuffing him.

Petitioner was transported to the Downers Grove Police Department and placed in an interview room until a Maywood officer arrived to transport him to the Maywood Police Department. Once petitioner arrived at the Maywood station, he was placed in a locked holding cell, where he was given food and allowed to sleep. When he was questioned the following day at around 3 p.m. (the officer who questioned petitioner testified that he waited until the following day because petitioner had appeared to be under the influence of drugs or alcohol), petitioner waived his Miranda rights and confessed to his involvement in the double murder.

After the close of evidence in the hearing on petitioner's motion to quash his arrest and suppress the resulting evidence, the parties filed briefs in support of their positions. The court then heard arguments, during which the parties agreed that all the relevant facts were undisputed. Petitioner argued that, "while the police may have had probable cause not with regard to [petitioner], but that a crime had been committed, they were not aware of what that crime was.

And, therefore, they couldn't hold [petitioner]." The court rejected this argument, found that there was probable cause to arrest petitioner, and denied petitioner's motion.

Petitioner proceeded to a jury trial. The evidence presented at trial, including petitioner's oral and written confessions, showed that, on the night of May 22, 2001, petitioner acted as the lookout while his accomplice, Jose Perez, shot two men in the back of their heads. Petitioner and Perez attempted to dispose of the bodies by setting fire to the van in which the bodies lay. The men were Jesus Rodriguez and Jesus Loyoza, drug dealers to whom Perez owed $100,000. In petitioner's written statement, which was published to the jury, he stated that Perez, Rodriguez, and Loyoza picked him up in a van and parked in an alley. After Rodriguez and Loyoza placed the money on the floor of the car and counted it, petitioner gave Perez a signal that no one was near. Perez then fired multiple gunshots into the victims' heads. Petitioner placed his bloody clothes in a black plastic bag, and disposed of the bag at work the next day.

The jury convicted petitioner of the murders and armed robberies of Rodriguez and Loyoza. Petitioner was sentenced to a term of natural life imprisonment. He appealed, raising three claims, including one that the police lacked probable cause to arrest him. Petitioner argued that although his disposal of a black plastic bag "may have given rise to a suspicion of some impropriety," it did not create sufficient probable cause for his arrest for the crimes of which he was eventually convicted. The Illinois Appellate Court disagreed and affirmed the trial court. Order, People v. Trevino, No. 01-07-2557 (Ill. App. Ct. Dec. 11, 2009). Petitioner filed a petition for leave to appeal, raising his probable cause claim. The Illinois Supreme Court denied the petition. People v. Trevino, 930 N.E.2d 415 (Ill. 2010) (table).

In February 2011, petitioner filed the instant petition for a writ of habeas corpus. The petition raises one issue: that the police lacked probable cause to arrest petitioner, and that the state courts committed an "egregious error in validating [his] arrest based on probable cause."

**DISCUSSION**

**I.     Petitioner's Fourth Amendment Claim**

A federal habeas court may not consider a Fourth Amendment claim, such as petitioner's, if the petitioner had a full and fair opportunity to litigate the claim in state court. Stone v. Powell, 428 U.S. 465, 494 (1976) ("Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at trial."). A habeas petitioner has received a full and fair opportunity to litigate when: "(1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." Miranda v. Leibach, 394 F.3d 984, 997 (7th Cir. 2005). This full and fair hearing requirement applies to the state trial court as well as the state appellate court on direct review. Id. (citing Stone, 428 U.S. at 489).

Petitioner concedes that he clearly apprised the state courts of his Fourth Amendment claim and its factual basis, but contends that he has not had a full and fair opportunity to litigate that claim because the state courts failed to carefully and thoroughly analyze the facts pertinent to that claim and applied the wrong constitutional case law to those facts. The record, however, does not support petitioner's arguments.

5

First, the court is unconvinced by petitioner's contention that the state courts failed to carefully and thoroughly analyze the facts of his case. Specifically, petitioner claims that the state courts failed to consider what Detective Franklin knew when he arrested petitioner: that a double murder had been committed in Maywood and that, on the following morning and in a town neighboring Maywood, petitioner had disposed of clothing that appeared to have bloodstains. That claim is belied by the record, which reflects that the state courts indeed carefully and thoroughly analyzed these facts, and no others, in finding that there was ample probable cause for petitioner's arrest.

Before ruling on petitioner's motion to quash his arrest and suppress the evidence recovered as a result of that arrest, the state trial court held an evidentiary hearing, solicited briefing, and heard oral arguments on the matter. After considering the facts as presented therein, which the parties agreed were basically undisputed, the court found:

> . . . on the basis of the bloody clothing and the gloves, that there was a probability that [petitioner] had committed an offense. And tied in with that fact that the officer who first received the call knew that there was a double homicide in Maywood, that the police were certainly within their rights in detaining [petitioner]. In fact, it probably would have been irresponsible for them not to have done so.
>
> So, even though the Defense argues at that time there was no particular suspect, that there were no eyewitnesses to the offense, the police did have probable cause to arrest him and detain him until further investigation was done. And a further investigation did prove that he was, in fact, the perpetrator.

Thus, it is clear that the trial court considered the pertinent facts in making its determination that petitioner's arrest was supported by probable cause, and nothing demonstrates that, to the contrary, the trial court improperly relied on evidence obtained as a result of petitioner's arrest to establish probable cause for that arrest.

6

In affirming, the Illinois Appellate Court found that, at the time of petitioner's arrest, "sufficient evidence existed to lead a reasonable person to believe a crime had occurred and [petitioner] committed it" based on the following facts presented in the trial court:

> Detective Franklin testified at the suppression hearing that he contacted the Maywood Police Department and placed [petitioner] under arrest because "[petitioner's] nature about when he suspiciously put [the bag] in the dumpster, and contents of it made us believe that he was involved in a violent crime." Detective Franklin further explained that he believed [petitioner] "had been involved in some sort of violent crime [and] during the course of committing that crime he got covered in some blood, and he was attempting to dispose of that clothing so it wouldn't be discovered." Although Detective Franklin was not aware of the specific circumstances surrounding the murders in Maywood, his testimony indicates he knew a violent crime had been committed in an area near where [petitioner] resided and he believed [petitioner] had been involved in a violent crime.
>
> The fact that Detective Franklin was aware a double homicide had occurred near the town where [petitioner] resided, mixed with the fact that Detective Franklin was aware of [petitioner's] attempt to suspiciously dispose of what appeared to be blood-stained clothing, towels and rubber gloves at his work place, was sufficient to lead a reasonably cautious person to believe [petitioner] had committed a violent crime. Accordingly, we find that Downer's Grove police had sufficient probable cause to place [petitioner] under arrest. See [People v. ]Wear, 229 Ill.2d [545,] 564 [(2008)] (in determining whether probable cause exists we ask whether there is a "probability of criminal activity," not whether there is "proof beyond a reasonable doubt").

The court clearly analyzed the facts from the perspective of Detective Franklin before petitioner's arrest, and, as was also the case with the trial court, nothing in the record indicates that the appellate court confused those facts with the evidence that was later recovered.

Petitioner's next contention, that the state courts failed to apply the proper constitutional standard to the facts of his case, is similarly unsupported. To determine whether the state courts "applied the proper constitutional case law," Hampton v. Wyant, 296 F.3d 560, 563 (7th Cir. 2002), the court need only assure that they "look[ed] to the appropriate body of decisional law," id. at 564, and is not entitled to review the manner in which the state courts applied that law.

7

This court's function is to ensure that there was no "subversion of the hearing process," not to determine "whether the judge got the decision right." Cabrera v. Hinsley, 324 F.3d 527, 532 (7th Cir. 2003). Thus, for this court to consider petitioner's claim, petitioner was required to identify circumstances that demonstrate "a subversion of the hearing process." Ben-Yisrayl v. Buss, 540 F.3d 542, 552 (7th Cir. 2008). This petitioner cannot do.

Petitioner unconvincingly argues that the state courts deprived him of a full and fair opportunity to litigate his Fourth Amendment claim because upholding the constitutionality of his arrest constituted an "egregious error." Even if petitioner is correct that the courts made an egregious error, "an 'egregious error' . . . is not enough to support a writ of habeas corpus." Hampton v. Wyant, 296 F.3d 560, 564 (7th Cir. 2002). Rather, the standard is whether there was a subversion of the process. Ben-Yisrayl v. Buss, 540 F.3d at 552 (citing Watson v. Hulick, 481 F.3d 537, 542 (7th Cir. 2007)). Further, petitioner's argument for "egregious error" rather than "subversion of the hearing process" is irrelevant, because the distinction he draws is meaningless. Petitioner defines "egregious error" to mean the same thing as the "subversion" standard: that is, that the court "closed its ears and mind to argument." Hampton, 296 F.3d at 564 (cited in Petitioner's Reply Brief at 5). Under either standard, the inquiry is whether the petitioner received a full and fair hearing, not whether the result of that hearing was correct.

In contrast to petitioner's interpretation, Stone and Hampton do not permit federal courts to "examine in any significant detail the quality of the hearing," which—as petitioner's arguments demonstrate—would inevitably lead back to the question of "whether the state judge had to arrive at the right decision in order for the hearing to pass muster." Cabrera v. Hinsley, 324 F.3d 527, 531 (7th Cir. 2003) (answering that question in the negative). Rather, this court's

role is to ensure that the integrity of the state court process was not compromised in some "obvious way." Id. ("Stone would not block habeas review if the judge had his mind closed to the necessity of a hearing, or was bribed, or decided, as Hampton says, that probable cause is not required in Illinois, or was sleepwalking (another example from Hampton) . . . ."). Petitioner does not make that type of argument, but rather claims that the state trial and appellate court must not have applied the proper constitutional standard because they arrived at what petitioner deems the incorrect result. This court's task, however, is not to determine whether it agrees with the state courts' reasoning, but to ensure that its reasoning was based on a correct understanding of the governing constitutional case law, and the record amply demonstrates that the state courts properly understood the applicable law and applied it appropriately.

The well-established constitutional standard relevant to petitioner's claim is that police have probable cause for an arrest if "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the arrestee] had committed . . . an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). The state trial court elucidated this standard (as quoted above) and found "that on the basis of the bloody clothing and the gloves" and "tied in with the fact that [Detective Franklin] knew that there was a double homicide in Maywood," "there was a probability that [petitioner] had committed an offense" and "the police where certainly within their rights in detaining" him. Petitioner emphasizes the court's failure to cite to Supreme Court case law, but as respondent notes, the trial court prefaced its ruling by stating that it had "read the briefs" and "would find on the basis of case law." These statements, combined with the court's unambiguous utilization of the proper standard, are sufficient to establish that the court "look[ed] to the appropriate body of

9

decisional law." Hampton, 296 F.3d at 563; see Cross v. Hardy, 632 F.3d 356, 361 (7th Cir. 2011) ("[A]lthough the state appellate court did not cite to any Supreme Court case, the standard it applied . . . was identical to" the applicable Supreme Court standard.").

Next, the appellate court also stated the correct probable cause standard and applied the facts to it (as quoted above), finding that Detective Franklin's knowledge that "a double homicide had occurred near the town where [petitioner] resided" and that petitioner had attempted to "suspiciously dispose of what appeared to be blood-stained clothing, towels and rubber gloves . . . was sufficient to lead a reasonably cautious person to believe [petitioner] had committed a violent crime."

The court therefore concludes that petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, and Stone v. Powell forecloses further review of that claim in federal court.

## II. Certificate of Appealability

A habeas petitioner is entitled to a certificate of appealability only if he has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Evans v. Circuit Court of Cook County, Ill., 569 F.3d 665, 667 (7th Cir. 2009). To make that showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because petitioner has not shown, nor would he be able to show, that reasonable jurists could argue that

this court should have applied <u>Stone v. Powell</u> differently and resolved his Fourth Amendment claim in a different manner, the court declines to issue a certificate of appealability.

## **CONCLUSION**

Thus, for the reasons discussed above, the petition for a writ of habeas corpus is denied. The court declines to issue a certificate of appealability.

**ENTER:** September 27, 2011

_____
**Robert W. Gettleman**
**United States District Judge**